**Francis M. COX, Jr., W. Bingham Cox and Robert M. Cox, Executors under the will of May Bingham Cox, deceased, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 72, Docket 27041.**

United States Court of Appeals Second Circuit.

Argued Oct. 31, 1961.

Decided Dec. 5, 1961.

R. Raleigh D'Adamo, New York City (Thacher, Proffitt, Prizer, Crawley & Wood, and John B. McCubbin, New York City, on the brief), for petitioners.

Michael I. Smith, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before CLARK, HINCKS and FRIENDLY, Circuit Judges.

HINCKS, Circuit Judge.

Petitioners seek review of a decision of the Tax Court assessing a deficiency of $3,860.47. The question is whether a bequest by testatrix to her son, a Jesuit priest, is a bequest or transfer "to or for the use of" a religious institution within the meaning of § 812(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(d) (now § 2055 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2055).

May Cox, the testatrix, left four sons when she died on August 3, 1954. Her will, executed in 1941, contained bequests to her sons. The three eldest sons were named as executors. To the fourth son, Lewis, she bequeathed 17¼ per cent of the residuary estate. Should he predecease the testatrix, his share was to be divided among his brothers.

■ Lewis had entered the Society of Jesus as a novice in 1934, at the age of eighteen. He was ordained a priest of the Roman Catholic Church in 1947. After a period of further training by the Society, he took his last or solemn vows of perpetual poverty, chastity and obedience on August 15, 1950. Two days previously, as required by laws of the Society, he had executed a written renunciation of all his property rights, which provided in part:

"I, Lewis Morris Paul Cox, approved scholastic of the Society of Jesus * * * do hereby fully and irrevocably renounce my properties and rights of whatever kind, as well those which I actually hold, even unknown to me, as those which will perchance accrue to me between the time of this renunciation and my last vows, and I dispose of them in favor of the Society of Jesus.

"Hereditary properties that will come to me after my last vows I do simply abdicate, according to the sense of Article 179, 2° of the Collection of Decrees. Properties which after my last vows will accrue to me under title of donation or of legacy I understand to be acquired for the Society and that they are to be applied according to the Institute of the same Society.

"This renunciation will not begin to have effect until after my last vows".

Thereafter, under canon law, Lewis could not acquire property except for the Order; any property then owned or later acquired would automatically become the property of the Order. And under New York law, this contract was enforceable against Lewis according to its terms and the laws of the Society. Burt v. Oneida Community, Ltd., 137 N.Y. 346, 33 N.E. 307, 19 L.R.A. 297 (1892); see St. Benedict's Order of New Jersey v. Steinhauser, 234 U.S. 640, 34 S.Ct. 932, 58 L.Ed. 1512 (1914).

The testatrix was a member of the Roman Catholic Church and active in its life. When she executed her will in 1941, she knew that Lewis had not yet been ordained and had not taken his solemn vows renouncing all his property, and that prior to taking his final vows he would still be free to leave the Society at any time, but that if subsequently he should become a Jesuit by taking the final vows of the Order he could not thereafter own or retain any property. Later, in 1953 after having learned that he had taken his solemn vows, she wrote to her attorney as follows:

"Lewis has been supported by the Jesuit Order for 18 years, so naturally I would like to remember him more than Frank, Jr., or Bing, not that he will be able to keep it for himself, but will be only too happy to pass it on to the order to whom he owes his happy contented life since he left our home."

At her death, the executor-sons paid $14,840.70 to the New York Province of the Society of Jesus. Typed on the face of the check were the words "Distribution on account of bequests under Will of May Bingham Cox to Lewis M. Cox." The check was deposited into the Society's general fund.

■ We think the decision of the Tax Court was right. The fact that after the

making of the will Lewis, to the knowledge of the testatrix, assigned to the Society his expectancy is not enough to constitute a "bequest * * * to or for" the Society within the meaning of § 812(d). For the will explicitly named Lewis as the legatee. Its language was too plain for any occasion to resort to processes of construction to ascertain the object of the testatrix's intended bounty. The testatrix's subsequent knowledge of any obligations Lewis had incurred which might control the disposition of *his* property did not alter the fact that it was to Lewis that she made the bequest of *her* property. As was said in Mississippi Valley Trust Co. v. Commissioner, 8 Cir., 72 F.2d 197, 199, cert. denied 293 U.S. 604, 55 S.Ct. 119, 79 L.Ed. 695, reh. denied 293 U.S. 631, 55 S.Ct. 147, 79 L.Ed. 717: "The testator and he alone must provide for the charitable bequest." See also Burdick v. Commissioner, 2 Cir., 117 F.2d 972; Levey v. Smith, 7 Cir., 103 F.2d 643; First Trust Co. of St. Paul State Bank v. Reynolds, 8 Cir., 137 F.2d 518.

The petitioners' case is based principally on a claim that in the situation here the bequest was one to Lewis "for the use of" the Society—that the testatrix by her will had thus made Lewis a constructive trustee for the benefit of the Society. But there is utterly no basis in fact for this claim: there is no evidence whatever that Lewis induced such a bequest by word or deed. The bequest was made not because of any representation to the testatrix that it would go to the Society. On the contrary, the will containing the bequest was made at a time when she expected that Lewis would be able to receive and retain the bequest. After she learned of Lewis' subsequent renunciation and assignment to the Society, there was no mistake or representation which induced her to leave her original bequest unchanged. Instead, she did so knowing, as she said in the letter to her attorney quoted above, that Lewis "will be only too happy *to pass it on* to the order * * *." (Emphasis supplied.) It was Lewis' renunciation and assignment which was to be the operative dispositive act—as the testatrix plainly recognized. She did not, as she readily might have done, by her will create any interest of any kind, equitable or legal, conditional or executory, in the Society.

It follows that the petitioners' reliance on Marine Midland Trust Co. of Southern N. Y. v. McGowan, 2 Cir., 223 F.2d 408, is misplaced. There the testator left money to an unincorporated association, ineligible for the charitable deduction, under the mistaken belief that an eligible successor corporation had been formed. Subsequent to his death, the successor corporation was formed to which all rights under the will were assigned. The probate court, acting on the assignment, directed distribution to the eligible association. This court allowed the deduction. But in doing so, it relied neither on the probate court determination, nor on the assignment, but on the will which, it found, had established a constructive trust—an equitable interest—for the benefit of the eligible corporation. Here, by contrast, testatrix's will established no constructive trust and there is no factual support for the rule of the dissenting opinion in Delaney v. Gardner, 1 Cir., 204 F.2d 855, of which we spoke approvingly in our Marine Midland opinion.

Affirmed.