**ESTATE of Harry Henderson LAMSON, Sr., George H. Lamson, Executor,**

v.

**The UNITED STATES.**

**No. 60–62.**

United States Court of Claims.

Nov. 13, 1964.

Llewellyn A. Luce, Washington, D. C., for plaintiff.

Gilbert W. Rubloff, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

COWEN, Chief Judge.

This suit is by plaintiff, the Estate of Harry Henderson Lamson, Sr., to recover $4,500 in estate taxes, plus interest, paid in connection with the estate tax return filed by plaintiff on May 9, 1957.

The only question presented by this case is whether a bequest to decedent's son constitutes a deductible charitable transfer for Federal estate tax purposes, where the decedent knew at the time he executed his will that his son, a priest, was bound by a religious vow requiring absolute poverty and the transfer of any inheritance he might receive to his re-

ligious order. The statute involved is 26 U.S.C. (I.R.C.1954) § 2055 (1958 Ed.).[1]

There is no dispute as to the facts which are set forth in the findings of the trial commissioner. In 1955 the testator executed a will in which the bequest in issue read as follows:

"Fourth, I give devise and bequeath to my son Harry Henderson Lamson, Jr., the sum of Twenty thousand dollars. ($20,000.00)"

The will also contained specific bequests of $10 to the testator's son, Harry Curtice Lamson, and of $10,000 to his daughter-in-law, Rosemarie Lamson. The residue of the estate was devised to a son, George Hunter Lamson, who was also named as executor. Upon the death of the testator in 1956, the will was admitted to probate without contest and distribution of the estate was made pursuant to the terms of the will.

Harry Henderson Lamson, Jr., the testator's son and the recipient of the specific bequest quoted above, entered the Capuchin Order of the Roman Catholic Church in 1947. He was no longer known in the church by his original name but had become known as "Father Solano", Padres Capuchinos. He was subsequently ordained a priest, and in 1950 took the final oath of absolute poverty. This vow requires the person taking it to give any property thereafter acquired to the church. At the time he signed the will and at the time of his death, the decedent knew that his son had taken a vow of poverty and was acquainted with the terms and conditions of the vow. After the will was probated, Father Solano transferred his bequest to the Capuchin Order, which the parties concede to be a qualified beneficiary under section 2055.

The purpose of section 2055 was stated by the Supreme Court in Y.M.C.A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924), as follows:

"Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death. It said to him: 'If you will make such gifts, we will reduce your death duties and measure them, not by your whole estate, but by that amount, less what you give.'"

The testator, and he alone, must provide for the charitable bequest and the fact that the proceeds of a bequest are used by a beneficiary for charitable purposes does not bring the bequest within the statute. Mississippi Valley Trust Co. v. Commissioner, 72 F.2d 197 (8th Cir. 1934); Levey v. Smith, 103 F.2d 643 (7th Cir. 1939).

In applying these principles, several cases involving facts that are similar to those before us have been decided adversely to the taxpayer.[2]

---

1. Section 2055 provides:
   "(a) In general.—
   For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * *.
      *      *      *
   "(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *."
   The word "transfers" as used in the statute relates only to transfers made by a decedent in contemplation of death or to take effect in possession or enjoyment at or after death. Taft v. Commissioner, 304 U.S. 351, 357, 58 S.Ct. 891, 82 L.Ed. 1393 (1938). The words "for the use of" as used in the statute are intended to convey a meaning similar to that of "in trust for". Cox v. Commissioner, 297 F.2d 36 (2d Cir. 1961).

2. Estate of Barry, 34 T.C. 160 (1960), aff'd 311 F.2d 681 (9th Cir. 1962); Cox v. Commissioner, 297 F.2d 36 (2d Cir. 1961); Estate of Callaghan, 33 T.C. 870 (1960); Estate of Dichtel, 30 T.C. 1258 (1958); see also Rev.Rul. 55–759, 1955–2 Cum.Bull. 607.

■ Plaintiff's principal argument is that, since the decedent knew his son would be obligated to transfer the proceeds of his inheritance to the Capuchin Order, the bequest to the son was a transfer "to or for the use of" the Capuchin Order. However, the fact that the decedent anticipated that his son would transfer the bequests to the religious order is not, standing alone, sufficient to establish that the decedent intended to make a gift to the order or to create a constructive trust for its benefit.

In Cox v. Commissioner, 297 F.2d 36 (2d Cir. 1961), the Second Circuit had before it a will in which the decedent bequeathed a portion of her estate to her son, Lewis, who was a Roman Catholic priest. The will was executed in 1941 and, although Lewis had entered the Society of Jesus as early as 1934, he did not take his last or solemn vows of poverty until 1950. After the testatrix learned that her son could not own or retain the property, she wrote a letter to her attorneys in 1953 in which she recognized her son's obligation to transfer the bequest to the Jesuit Order and expressed her satisfaction that the Order would receive the inheritance. The court held that the will in which Lewis was explicitly named as legatee was too plain to permit a resort to processes of construction to ascertain the intent of the testatrix and refused to find that the will had made Lewis a constructive trustee for the religious order. The court stated:

"After she [testatrix] learned of Lewis' subsequent renunciation and assignment to the Society, there was no mistake or representation which induced her to leave her original bequest unchanged. Instead, she did so knowing, as she said in the letter to her attorney quoted above, that Lewis 'will be only too happy to *pass it on* to the order * * *.' (Emphasis supplied.) It was Lewis' renunciation and assignment which was to be the operative dispositive act—as the testatrix plainly recognized. She did not, as she readily

might have done, by her will create any interest of any kind, equitable or legal, conditional or executory, in. the Society."

In Estate of Barry v. Commissioner, 311 F.2d 681 (9th Cir. 1962), the decedent executed a will in 1947 in which he made a specific bequest to one of his sons, Joseph F. Barry, S. J. The son had been a member of the Jesuit Order since 1935 and the initials "S.J." indicated his membership in the Order. He took his first perpetual vows in 1937 and his final vows in 1952, when he agreed that whatever property might devolve to him would be transferred to the Society. The testator was aware of this before his death in 1955 and believed that any property he bequeathed to his son would ultimately be transferred to the Society. In declining to hold that the bequest was made to a constructive trustee for the use of the religious order, the court reached the same result as in Cox v. Commissioner, supra.

In the absence of fraud, misrepresentation or other circumstances which would support the creation of a constructive trust, we must look to the provisions of the will itself to ascertain the intent of the testator. The specific bequest to Harry Henderson Lamson, Jr., is absolute on its face. The will shows a pattern of testamentary disposition that is family oriented, without mention of the Capuchin Order or reference to any charitable purpose.

The facts before us may well present a weaker case than the facts in the cited cases. The testator knew of the vow which his son had taken at the time the will was written. If, as plaintiff asserts, decedent intended to make a gift to the religious order, it would seem that he would have given some indication of this at the time the will was executed when he might readily have expressed such an intention. Furthermore, we do not have here, as in Cox and Barry, evidence of statements by the testator that he was satisfied the charity would receive the property bequeathed to his son.

It would be interesting to speculate whether the testator would have disinherited his son had he left the religious order, as he was free to do, before the testator's death. However, we need not indulge in such speculation, because we have concluded that the evidence in this case shows that the testator intended to make an unconditional bequest to his son, Harry Henderson Lamson, Jr.

■ We find that no constructive trust was established for the benefit of the Capuchin Order. Any rights of the Order to the funds bequeathed to the son rose outside the will by contract. St. Benedict's Order of New Jersey v. Steinhauser, 234 U.S. 640, 34 S.Ct. 932, 58 L.Ed. 1512 (1914).

For the reasons stated, the estate is not entitled to the charitable deduction claimed, and the petition is dismissed.