CoweN, Chief Judge,
delivered the opinion of the court:
This suit is by plaintiff, the Estate of Harry Henderson Lamson, Sr., to recover $4,500 in estate taxes, plus interest,, paid in connection with the estate tax return filed by plaintiff on May 9, 1957.
The only question presented by this case is whether a bequest to decedent’s son constitutes a deductible charitable transfer for Federal estate tax purposes, where the decedent knew at the time he executed his will that his son, a priest, was bound by a religious vow requiring absolute poverty and the transfer of any inheritance he might receive to his religious order. The statute involved is 26 U.S.C. (I.R.C. 1954) §2055 (1958 Ed.).[1]
There is no dispute as to the facts which are set forth in the findings of the trial commissioner. In 1955 the testator executed a will in which the bequest in issue read as follows:
Fourth, I give devise and bequeath to my son Harry Henderson Lamson, Jr., the sum of Twenty thousand dollars. ($20,000.00)
The will also contained specific bequests of $10 to the testator’s son, Harry Curtice Lamson, and of $10,000 to his daughter-in-law, Rosemarie Lamson. The residue of the estate was devised to a son, George Hunter Lamson, who was also named as executor. Upon the death of the testator in 1956, the will was admitted to probate without contest and distribution of the estate was made pursuant to the terms of the will.
*35 Harry Henderson Lamson, Jr., the testator’s son and the recipient of the specific bequest quoted above, entered the Capuchin Order of the Roman Catholic Church in 1947. He was no longer known in the church by his original name but b.ad become known as “Father Solano”, Padres Capuchinos. He was subsequently ordained a priest, and in 1950 took the final oath of absolute poverty. This vow requires the person taking it to give any property thereafter acquired to the church. At the time he signed the will and at the time of his death, the decedent knew that his son had taken a vow of poverty and was acquainted with the terms and conditions of the vow. After the will was probated, Father Solano transferred his bequest to the Capuchin Order, which the parties concede to be a qualified beneficiary under section 2055.
The purpose of section 2055 was stated by the Supreme Court in Y.M.C.A. v. Davis, 264 U.S. 47 (1924), as follows:
Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death. It said to him “if you will make such gifts, we’ll reduce your death duties and measure them not by your whole estate but by that amount, less what you give.”
The testator, and he alone, must provide for the charitable bequest and the fact that the proceeds of a bequest are used by a beneficiary for charitable purposes does not bring the bequest within the statute. Mississippi Valley Trust Co. v. Commissioner, 72 F. 2d 197 (8th Cir. 1934); Levey v. Smith, 103 F. 2d 643 (7th Cir. 1939).
In applying these principles, several cases involving facts that are similar to those before us have been decided adversely to the taxpayer.[2]
*36 Plaintiff’s principal argument is that, since the decedent knew his son would be obligated to transfer the proceeds of his inheritance to the Capuchin Order, the bequest to the son was a transfer “to or for the use of” the Capuchin Order. However, the fact that the decedent anticipated that his s,on would transfer the bequests to the religious order is not, standing alone, sufficient to establish that the decedent intended to make a gift to the order or to create a constructive trust for its benefit.
In Cox v. Commissioner, 297 F. 2d 36 (2d Cir. 1961), the Second Circuit had before it a will in which the decedent bequeathed a portion of her estate to her son, Lewis, who was a Homan Catholic priest. The will was executed in 1941 and, although Lewis had entered the Society of Jesus as early as 1934, he did not take his last or solemn vows of poverty until 1950. After the testatrix learned that her son could not own or retain the property, she wrote a letter to her attorneys in 1953 in which she recognized her son’s obligation to transfer the bequest to the Jesuit Order and expressed her satisfaction that the Order would receive the inheritance. The court held that the will in which Lewis was explicitly named as legatee was too plain to permit a resort to processes of construction to ascertain the intent of the testatrix and refused to find that the will had made Lewis a constructive trustee for the religious order. The court stated:
After she [testatrix] learned of Lewis’ subsequent renunciation and assigmnent to the Society, there was no mistake or representation which induced her to leave her original bequest unchanged. Instead, she did so knowing, as she said in the letter to her attorney quoted above, that Lewis “will be only too happy to pass it on to the order * * (Emphasis supplied.) It was Lewis’ renunciation and assignment which was to be the operative dispositive act — as the testatrix plainly recognized. She did not, as she readily might have done, by her will create any interest of any kind, equitable or legal, conditional or executory, in the Society.
In Estate of Charles J. Barry v. Commissioner, 311 F. 2d 681 (9th Cir. 1962), the decedent executed a will in 1947 in which he made a specific bequest to one of his sons, Joseph *37 F. Barry, S. J. The son had been a member of the Jesuit Order since 1935 and the initials “S.J.” indicated his membership in the Order. He took his first perpetual vows in 1937 and his final vows in 1952, when he agreed that whatever property might devolve to him would be transferred to the Society. The testator was aware of this before his death in 1955 and believed that any property he bequeathed to his son would ultimately be transferred to the Society. In declining to hold that the bequest was made to a constructive trustee for the use of the religious order, the court reached the same result as in Cox v. Commissioner, supra.
In the absence of fraud, misrepresentation or other circumstances which would support the creation of a constructive trust, we must look to the provisions of the will itself to ascertain the intent of the testator. The specific bequest to Harry Henderson Lamson, Jr., is absolute on its face. The will shows a pattern of testamentary disposition that is family oriented, without mention of the Capuchin Order or reference to any charitable purpose.
The facts before us may well present a weaker case than the facts in the cited cases. The testator knew of the vow which his son had taken at the time the will was written. If, as plaintiff asserts, decedent intended to make a gift to the religious order, it would seem that he would have given some indication of this at the time the will was executed when he might readily have expressed such an intention. Furthermore, we do not have here, as in Cox and Barry, evidence of statements by the testator that he was satisfied the charity would receive the property bequeathed to his son.
It would be interesting to speculate whether the testator would have disinherited his son had he left the religious order, as he was free to do, before the testator’s death. However, we need not indulge in such speculation, because we have concluded that the evidence in this case shows that the testator intended to make an unconditional bequest to his son, Harry Henderson Lamson, Jr.
We find that no constructive trust was established for the benefit of the Capuchin Order. Any rights of the Order to the funds bequeathed to the son rose outside the will by *38 contract. St. Benedict Order v. Steinhauser, 234 US. 640 (1914).
For the reasons stated, tbe estate is not entitled to the charitable deduction claimed, and the petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Bobert K. McConnaughey, and the briefs, makes findings of fact as follow:
1. The plaintiff is the Estate of Harry Henderson Lam-son, Sr., Mr. George H. Lamson, Executor.
2. Harry Henderson Lamson, Sr. (sometimes referred to hereafter as the decedent), a citizen of the United States and a resident of the District of Columbia, died on February 18, 1956. At the time of his death, he was domiciled in the District of Columbia and resided at 820 Connecticut Avenue, Washington, D.C.
3. The decedent left a last will and testament by which he nominated, constituted, and appointed his son, George Hunter Lamson, executor of his last will and testament. The text of decedent’s will is included in these findings as appendix A.
4. The will of the decedent was duly probated in the United States District Court for the District of Columbia, holding a Probate Court, and George Hunter Lamson qualified as executor.
5. George Hunter Lamson (sometimes referred to hereafter as the executor) is a citizen of the United States and is the duly appointed, qualified, and acting executor of the estate of the decedent.
6. In his last will and testament, the decedent made the following bequest:
Fourth, I give devise and bequeath to my son Harry Henderson Lamson, Jr., the sum of Twenty thousand dollars. ($20,000.00)
7. At the time of the signing and execution of the decedent’s will, September 7, 1955, and at the time of decedent’s death, February 18, 1956, Harry Henderson Lamson, Jr., had become a priest of the Catholic Faith, Capuchin *39 Order. He was no longer known in the church as Harry Henderson Lamson, Jr., but had become known as “Father Solano,” Padres Capuchinos. He entered the Capuchin Order in 1947 and took the final vow of poverty on July 14, 1950. The text of the rules and regulations of the Capuchin Order of the Roman Catholic Church which relate to the vow of poverty taken by Harry Henderson Lamson, Jr., is included in these findings as appendix B.
8. At the time of signing his will and at the time of his death, the decedent knew that his son, Father Solano, had taken a vow of poverty. The decedent was also acquainted with the terms and conditions of the vow.
9. The United States District Court for the District of Columbia, having jurisdiction of the decedent’s estate and having admitted the decedent’s will to probate, recognized and allowed the bequest of $20,000 to Harry Henderson Lamson, Jr. There was no contest of the decedent’s will or any provision thereof.
10. In accordance with his vow, Harry Henderson Lam-son, Jr., transferred the proceeds of his bequest under the will of Harry Henderson Lamson, Sr., to the Capuchin Order which, in turn, used the funds for religious purposes.
11. On or about May 9, 1957, a United States Estate Tax Return (Form 706), for the Estate of Harry Henderson Lamson, Sr., deceased, executed by George Hunter Lamson as executor, -was filed with the Director of Internal Revenue, Baltimore District, who is referred to hereafter as the District Director. At the time of filing, on or about May 9, 1957, a Federal estate tax of $8,983.94 was paid to the District Director by the executor on behalf of the estate.
12. On June 15, 1959, under the determination and demand of the District Director, an additional estate tax of $2,291.37, plus interest of $268.02, was paid to the District Director by the executor in behalf of the estate.
13. On August 11, 1959, plaintiff filed, with the District Director, on Form 843, a claim for refund of Federal estate taxes in the amount of $4,500, plus interest, as required by law.
*40 14. The plaintiff claimed and alleged that the decedent’s bequest to Harry Henderson Lamson, Jr., “Father Solano,” constituted a religious bequest and/or a bequest for religious purposes under the Internal Kevenue Code; that, as such, the bequest was not subject to Federal estate tax, and that the taxable estate of the decedent should be reduced by $20,000, by recognizing that the $20,000 bequest should be deducted from the taxable estate by treating the $20,000 bequest as a deduction and/or an exemption as a religious bequest or bequest for religious purposes.
15. On December 13, 1960, plaintiff’s claim for refund of $4,500 was disallowed in full by the District Director. Notice of disallowance, signed by the District Director, was mailed to the plaintiff by certified mail (No. 43620) on December 13,1960. The text of the notice of disallowance is included in these findings as appendix C.
16. The petition in this case was filed less than 2 years after the disallowance and rejection of the plaintiff’s claim.
17. Plaintiff is not afforded an appeal to any department of the Internal Kevenue Service, nor to any department of the Executive branch of the Government from, the action of the District Director or the Commissioner of Internal Kevenue of the United States, disallowing plaintiff’s claim for refund. No action on this claim, other than herein stated, has been taken before Congress or other departments of the United States or in any court, other than the petition filed in this court. Plaintiff is the sole owner of the claim.

Appendix A

LAST WILL AND TESTAMENT OF
Harry Henderson Lamson, Senior
In the Name op God, Amen,
I, Harry Henderson Lamson, Sr. of 820 Connecticut Ave Washington, D.C. being of sound and disposing mind, memory and understanding, and capable of executing a valid deed or contract, considering the certainty of death and the uncertainty of the time thereof, and being desirous to settle *41 my worldly affairs, and thereby be the better prepared to leave this world when it shall please the Almighty to call me hence, do hereby make, publish and declare this my last Will and Testament, hereby revoking and annulling all wills and testamentary dispositions heretofore made by me, in manner and form following, that is to say:
First, and principally, I commit my soul into the hands of Almighty God, and my body to the earth, to be decently buried at the discretion of my executor hereinafter named ; and my will is, that all my just debts and funeral expenses shall be paid by my executor hereinafter named as soon after my decease as shall be convenient:
Second, I give, devise and bequeath to my son Harry Curtice Lamson the sum of ten dollars. ($10.00)
Third, I give devise and bequeath to my daughter-in-law Eosemarie Lamson (bom Eosemarie Lidschreiber in Mies-bach, Germany) the sum of ten thousand dollars ($10,000.00)
Fourth, I give devise and bequeath to my son Harry Henderson Lamson, Jr. the sum of Twenty thousand dollars. ($20,000.00)
All the rest and residue of my estate, both real, personal and mixed, I give, devise, and bequeath to my son George Hunter Lamson.
And Lastly, I do hereby nominate, constitute and appoint my son, George Hunter Lamson executor of this, my last Will and Testament, and I desire that my executor herein-before named shall not be required to give bond for the faithful performance of the duties of that office.
In Testimony Whereof, I have set my hand and seal to this, my last Will and Testament, at Washington, D.C. this 7th day of September in the year of our Lord one thousand nine hundred and fifty-five.
/s/ Harry Henderson Lamson, Sr. [SEAL]
Signed, Sealed, Published, and Declared, by Harry Henderson Lamson, Jr. the above-named testator, as and for his last Will and Testament, in our presence, and at his re *42 quest, and in his presence, and in the presence of each other, we have hereunto subscribed our names as attesting witnesses.
/s/ Jean C. Stamback Residence 3405 Ferndale St. Kens. Md.
/s/ Olive K. Barcy Residence 4219-2nd Road, North, Arlington, Va.
/s/ J. Beatrice Lewis 4115-30th St.
Mt Rainier, Md.

Appendix B

The Code of Cannon [sic] Law Book II — Part II Title 12, Cannon [sic] 581 & 582
The religious under simple profession cannot validly renounce ownership of his property until sixty days before solemn profession, but, under the contention of his forthcoming solemn profession, he must, within that period, renounce all property actually owned by him in favor of whosoever he choses, [sic] without prejudice to particular indults granted by the Holy See. Immediately after profession all the formalities required in the secular law for the effectiveness of the beneficiaries must be executed. The beneficiary of property given to a religious of solemn vows after his solemn profession is, given without prejudice to the particular indults of the Holy See; (1) the Order or the province or religious houses, according to the Constitution, if the Order is capable of ownership (2) otherwise, the Holy See.
•f»
Constitution Capuchin Friars’ Minor — Saint Francis Chapter 6 — No. 97
We, therefore, desiring to imitate in poverty this lofty example of Christ, and to relay to put into practice the Se *43 raphic precept of poverty, wish it to be understood that we have, in effect, entered individually or in common saving the rights of the Holy See, no temporal jurisdiction, dominion, ownership, juridical possession, usufruct, nor legal use of anything, even of the things that we use through necessity, nor of the houses where we dwell this, however, does not imply that it is lawful for us to have the simple use of all things necessary for life and for the fulfillment of our duties; a simple use which must be strict but moderate according to the precept of the rule.
* * # #
Exerpts [sic] from the Rule of the First Order of Saint Francis
Chapter IV — Page 105
That the Friars may not Receive Money.
I strictly command all the Friars that they by no means receive coin or money, either by themselves or through the medium of others. Nevertheless, the Ministers and Custodes, and they only, shall take special care to provide for the needs of the sick and the clothing of the Friars, through their spiritual friends, according to places, seasons, and cold climates, as they may deem necessary; saving always that, as before said, they receive neither coin nor money.
# * * * ^

Exerpts [sic]

From The Rule of the First Order of Saint Francis

The Sixth Chapter — Page 129
1. The Prohibition of any Kind of Ownership.
Here we have to speak of the prohibition to own property and of its bearings on practical life; then of the use of *44 temporal tilings, of community life, of the sin of proprietorship, of the ecclesiastical decrees and their subsequent exemptions and, finally, of the virtue of poverty,
a) The Prohibition of Ownership.
The vow of poverty in religion is the promise made to God to renounce the ownership of temporal goods that have monetary value, and to depend on the Superior’s will with regard to their use. This vow differs in scope in different Orders. Thus there are Orders in which the Institute or monastery as such may and actually does own property, whereas the individual member may not. Here we shall discuss the vow of poverty only as it is binding in the Order of Saint Francis.
Poverty, in as far as it binds us Friars Minor, proscribes not only the exercise, but also the right of ownership, both with regard to the Order and its individual members. Moreover, it prohibits the simple use of temporal things by the individual friar without the permission of his Superior. The right of ownership is the legal capacity to dispose of temporal goods at one’s will, in as far as it may not be forbidden by law. This right is perfect, if one may freely dispose both of the property and of its fruits; it is imperfect, if it is restricted either to the property itself or to its revenues. The Order of Saint Francis has no right of disposal. Unless the benefactors retain the title to the property, as is sometimes done in the case of a new foundation, all temporalities become the property of the Holy See. Such is the decision of Pope Sixtus IV. Canon Law ordains that all temporal goods which a friar may inherit after his solemn profession, become the property of the Apostolic See. This holds good both with regard to the whole Order and the individual members. No friar has the right to own anything that has monetary value. Goods that have an ideal value (for instance one’s honor and reputation, the use of one’s talents, virtue, health etc) do not come under the vow.

*45
Appendix O

(SEAL)
U.S. TREASURY DEPARTMENT
INTERNAL REVENUE SERVICE
District Director 707 N. Calvert St. Baltimore 2, Maryland December 13,1960
CERTIFIED
In Reply Refer To< 2210
George H. Lamson Executor Estate of Harry Henderson Lamson, Sr. c/o Llewellyn A. Luce 937 Munsey Building Washington, D. C.
In Re: Claim for Refund of $4,500.00 plus
For the Period
D/D 2/18/56 DT 8304(57)
In accordance with the provisions of existing internal revenue laws, this notice of disallowance in full of your claim- or claims is hereby given.
No suit or proceeding in any court for the recovery of any-intemal revenue tax, penalty, or other sum'which is'a part of the claim for which this notice of disallowance is issued,, may be begun after the expiration of two years from the date-of mailing of this letter.
Very truly yours,
s/s Irving Machiz District Director
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter-of law that plaintiff is not entitled to recover, and the petition is dismissed.

 Section 2055 provides :
“(a) In general.
Por purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * *.
*****
,(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * 4 *.
The word “transfers” as used in the statute relates only to transfers made by a decedent in contemplation of death or to take effect in possession or enjoyment at or after death. Taft v. Commissioner, 304 U.S. 351, 357 (1938). The words “for the use of” as used in the statute are intended to convey a meaning similar to that of “in trust for”. Coto v. Commissioner, 297 F. 2d 36 (2d Cir. 1961).”

 Estate of Charles J. Barry, 34 T.C. 160 (1960), aff’d 311 F. 2d 681 (9th Cir. 1962); Cox v. Commissioner, 297 F. 2d 36 (2d Cir. 1961); Estate of Margaret E. Callaghan, 33 T.C. 870 (1960); Estate of George W. Dichtel 30 T.C. 1258 (1958); see also Rev. Rul. 55-759, 1955-2 Cum. Bull. 607.