ESTATE OF CLAIRE FERN PICKARD, DECEASED, OHIO NATIONAL BANK OF COLUMBUS, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6629–71. Filed July 30, 1973.

*Joseph S. Platt, John A. Dunkel,* and *David S. Workman,* for the petitioner.

*Ross F. Springer,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of $45,895.36 in the estate tax of the Estate of Claire Fern Pickard. The only question raised is whether the estate is entitled to a charitable deduction under section 2055.[1]

All of the facts have been stipulated and are so found.

The Ohio National Bank of Columbus is the executor of the Estate of Claire Fern Pickard. Its principal office was located in Columbus, Ohio, at the time of the filing of the petition herein. A Federal estate tax return was timely filed with the district director of internal revenue, Cincinnati, Ohio.

On June 24, 1954, decedent, Claire Fern Pickard, established a revocable trust (hereinafter referred to as the Pickard Trust) with the Ohio National Bank of Columbus and Herbert S. Peterson (decedent's stepfather) as trustees. The trust instrument provided for payment of income and principal to decedent upon request during her life. After decedent's death, an annuity of $3,000 was to be paid to decedent's mother, Etta Mae Peterson, during her life and, upon the mother's death (or upon decedent's death, if her mother predeceased her), "the Trustees shall transfer, assign and convey the entire Trust Estate then remaining in its hands absolutely and in fee simple to Herbert S. Peterson to be his absolute property."

The decedent died testate on December 3, 1967, a resident of Columbus, Ohio. On December 13, 1967, her will was admitted to probate. Under the will, the residue of the decedent's estate was bequeathed and devised to the Pickard Trust.

---

[1] All Code references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.

The decedent was survived by her mother, Etta Mae Peterson. The parties have agreed on the value of the annuity payable to her.

Decedent's stepfather, Herbert S. Peterson (hereinafter referred to as Peterson), died testate on October 14, 1967, 7 weeks prior to the date of decedent's death. His will, duly admitted to probate, bequeathed and devised the residue of his estate to a revocable trust (sometimes hereinafter referred to as the Peterson Trust), of which the Ohio National Bank of Columbus was trustee, created by him just prior to the execution of his will on June 1, 1964.

The Peterson Trust named Peterson's wife (decedent's mother) as life beneficiary after Peterson's death and provided that, upon the death of Peterson, his said wife, and decedent, $10,000 of the trust assets should be distributed to two named individuals if living,[2] and the balance as follows:

One-half of the remaining assets to the First English Lutheran Church of Columbus, Ohio, or its successors.

One-half of the remaining assets to the Columbus Foundation, Columbus, Ohio.

On June 26, 1968, the Ohio National Bank of Columbus, as executor of the Estate of Claire Fern Pickard, deceased, commenced an action in the Probate Court of Franklin County, Ohio, naming as defendants the First English Lutheran Church of Columbus, Ohio, the Pickard Trust, the Estate of Herbert S. Peterson, the Peterson Trust, the Columbus Foundation, and Etta Mae Peterson. The action had as its purpose the obtaining of a court determination as to how the probate assets of decedent's estate and the assets of the Pickard Trust should be distributed.

All of the defendants filed answers which, with the exception of the answer of Etta Mae Peterson, were identical, admitting the allegations of fact and joining in the request for a court determination. Etta Mae Peterson's answer also admitted the facts in the petition but claimed that she was entitled to a termination of the Pickard Trust and to a distribution of all of its assets as sole surviving beneficiary named therein and as sole surviving heir at law of decedent and to a distribution of the residue of the decedent's probate assets as sole heir at law of the decedent.

The case was submitted to a referee. Oral argument was heard and the case was submitted on briefs. The referee submitted his report, which formed the basis of an order by the Probate Court on July 16, 1969, providing in pertinent part as follows:

It Is Therefore Ordered, Adjudged and Decreed, that:

1. The Pickard Trust is the residuary beneficiary of all the assets of the Estate of Claire Fern Pickard, deceased.

---

[2] One of these individuals predeceased Peterson.

2. The property contained within the Pickard Trust passes to the beneficiaries named in that Trust in accordance with the provisions contained solely within that Trust.

3. Herbert S. Peterson obtained a vested interest subject to divestment in the Pickard Trust assets at the time of the creation of that Trust.

4. The interest of Herbert S. Peterson in the assets of the Pickard Trust, never having been divested, became absolute at the time of Claire Fern Pickard's death.

5. Since Herbert S. Peterson predeceased Claire Fern Pickard, the Herbert S. Peterson Estate and/or the Peterson Trust must be the residuary beneficiary of both the Probate and Non-Probate assets of the Pickard Trust.

6. The Peterson Estate and/or Peterson Trust being the residuary beneficiary of both the Probate and Non-Probate assets of the Pickard Trust, the following distribution should be made:

(a) The Executor of the Estate of Claire Fern Pickard, deceased, should distribute the Probate assets of said Estate to the Trustee of the Claire Fern Pickard Trust.

(b) The Trustee of the Pickard Trust should pay Three Thousand Dollars ($3,000.00) annually to Etta Mae Peterson during her lifetime; at her death the Trustee of the Pickard Trust should pay the balance to either Herbert S. Peterson Estate or the Peterson Trust:

(1) Of those assets received from the Pickard Estate;

(2) Of those assets presently held by the Trustee of the Pickard Trust.

(c) The Pickard Trust should not be terminated until the death of Etta Mae Peterson, distribution to then be made to either the Herbert S. Peterson Estate or the Peterson Trust:

(1) If at the time the Pickard Trust is terminated, the Herbert S. Peterson Estate is active, distribution of the Trust assets should be made to the Herbert S. Peterson Estate.

(2) If at the time the Pickard Trust is terminated, the Herbert S. Peterson Estate is closed, distribution of the Trust assets should be made to the Herbert S. Peterson Trust.

Section 2055 provides, among other things, that "the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes."

The parties herein are in agreement as to the exempt character of the two organizations involved and as to the amount of the deduction, if found to be allowable. Additionally, no question has been raised whether the provisions of any of the instruments involved or the possibility of claims against either the Pickard or Peterson estates or trusts might operate in such a way as to make the interests of those organizations unascertainable or subject to the so-remote-as-to-be-negligible possibility that the transfers would not become effective. See sec. 20.2055-2, Estate Tax Regs.

The sole question to be decided herein is whether the provisions of decedent's will and the Pickard Trust are operative within the framework of the above-quoted statutory language. Petitioner asserts that there are three elements contained in section 2055, all of which are satisfied in this case, namely, (1) decedent made a transfer, (2) of property includable in her gross estate, and (3), by virtue of her stepfather's death and the provisions of his will and the Peterson Trust, to or for the use of a qualified entity. Such assertion is premised upon the assumption that each of three elements is independent of each other and that section 2055 can therefore be fragmented in order to determine whether a deduction is allowable. Under petitioner's reasoning, the route of devolution is immaterial; it is enough if there is a transfer of includable property which must, because of the surrounding circumstances, inevitably find its way into the coffers of an exempt organization.

In our opinion, such separation of the three elements is improper. We believe that the first and third elements are mutually interdependent and that the "transfer * * * to or for the use of" such organization must be manifest from the provisions of the decedent's testamentary instrument.

The impact of the route of devolution has been considered in a variety of contexts. Thus, in *Senft* v. *United States*, 319 F. 2d 642 (C.A. 3, 1963), property of the decedent, who died intestate, escheated to the Commonwealth of Pennsylvania. In denying the decedent a deduction under section 2055, the Court of Appeals emphasized decedent's failure to make the transfer, as opposed to the property passing to the qualified recipient by another force, i.e., by operation of law.

In *Cox* v. *Commissioner*, 297 F. 2d 36 (C.A. 2, 1961), affirming a Memorandum Opinion of this Court, a deduction under the predecessor of section 2055 was denied where the testatrix, with full knowledge of all relevant facts and her express approval of the ultimate recipient of the bequest, bequeathed part of her estate to her son, a priest, who had, prior to her death but subsequent to the making of the testatrix's will, taken solemn vows of poverty and renounced all his interests in property (including donations and legacies) in favor of the Society of Jesus, a qualified entity under the statute.[3]

Similar reasoning formed the underpinning of the Supreme Court's decision in *Taft* v. *Commissioner*, 304 U.S. 351 (1938), where the

---

[3] Similar facts, with the same result, can be found in *Lamson's Estate* v. *United States*, 338 F.2d 376 (Ct. Cl. 1964) ; *Barry's Estate* v. *Commissioner*, 311 F.2d 681 (C.A. 9, 1962) ; and *Estate of Margaret E. Callaghan*, 33 T.C. 870 (1960).

decedent died with an outstanding but unfulfilled pledge of a charitable contribution which constituted a binding contractual obligation under local law. The Supreme Court denied a deduction for estate tax purposes on the grounds that the claim was not supported by adequate and full consideration as required by then existing law [4] and that there was no bequest, legacy, devise, or transfer within the meaning of the predecessor of section 2055.

In each of the foregoing cases, the fact that the designated portion of the decedent's estate inevitably inured to the benefit of the charity did not save the day. To be sure, they can be distinguished on their facts, but the common element which forms the foundation for decision is that the transfer to or for the use of the charity was not effectuated by a testamentary transfer on decedent's part but rather by the operation of an external force. The same is true herein, where it was the testamentary disposition of decedent's stepfather via the Peterson Trust which accomplished the transfer.

Concededly, the charities herein would not have received decedent's property if the decedent had not made the testamentary disposition to her stepfather. The lesson from the decided cases, however, is that a simple "but for" test is not, as petitioner would have us hold, sufficient. There must be something more, namely, the testamentary facts as gleaned from the decedent's own disposition must manifest the transfer to the charity.[5] *Commissioner* v. *Noel Estate*, 380 U.S. 678 (1965). In so stating, we do not imply that the decedent must specify the charitable recipient in so many words. But, at the very least, the instrument of testamentary disposition must sufficiently articulate, either directly or through appropriate incorporation by reference of another instrument, the manifestation of decedent's charitable bounty. See *Y.M.C.A.* v. *Davis*, 264 U.S. 47, 50 (1924). Such a situation simply does not obtain herein and, accordingly, the claimed deduction is not allowable.

In order to reflect other concessions by the parties and to permit a deduction for expenses in this proceeding (see Rule 51, Tax Court Rules of Practice),

*Decision will be entered under Rule 50.*

---

[4] The statute now dispenses with the requirement of such consideration in respect of "a promise or agreement of the decedent to make a contribution or gift to or for the use of," a qualified donee. See sec. 2053(c)(1).

[5] Under such a test, it is unnecessary to go outside the instruments involved in order to determine the decedent's intent. Compare *Continental Ill. Nat. B. & T. Co. of Chicago* v. *United States*, 403 F.2d 721 (Ct. Cl. 1968) ; *Mozelle C. Kluss*, 46 T.C. 572 (1966) ; *Estate of Margaret E. Callaghan, supra.*