CONTINENTAL ILLINOIS NATIONAL
BANK AND TRUST COMPANY
OF CHICAGO

v.

The UNITED STATES.

No. 396-65.

United States Court of Claims.

Nov. 15, 1968.

John F. Beggan, Washington, D. C., atty. of record, for plaintiff. James A. Velde, Peter H. Merlin, and Gardner, Carton, Douglas, Chilgren & Waud, Chicago, Ill., of counsel.

William C. Ballard, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

COWEN, Chief Judge.

Richard Wasserman, the testator, an American citizen at the time of his death, bequeathed the residue of his estate to "the Mayor & Magistratsraete of Fuerth, Bayern, Germany 13a, to be used and expended for the benefit of said city of Fuerth." Fuerth's City Council[1] has used the money thus far for construction of an old peoples' home for the city's inhabitants, and has earmarked any additional funds for operating and maintaining the home.

The Internal Revenue Service included the amount of the bequest, about $341,000, in the testator's gross estate. Plaintiff, as executor, paid the tax and filed a claim for refund. This was disallowed. Now the executor sues for a refund of about $86,000 plus interest, arguing that the residuary bequest is deductible from the testator's gross estate as a charitable contribution within the provisions of § 2055(a) of the Internal Revenue Code of 1954,[2] or is exempt from estate taxation under Article XI[3] of the 1954 German-American Treaty of Friendship, Commerce, and Navigation of October 29, 1954, 7 U.S. Treaties 1839. On the undisputed facts, we hold that plaintiff's contentions fail, and hence that its claim for refund was correctly disallowed.

I

Plaintiff's first contention is that this bequest was charitable, and thus entitled to be deducted from the gross estate under the provisions of § 2055(a) (2) or (3). For the reasons which follow, we reject this contention.[4]

(a)

Section 2055(a) (1) permits an estate to deduct the amount of a bequest to or for the use of the United States, any state, or any political subdivision thereof for exclusively public purposes. Since the bequest before us was to a foreign municipality, the taxpayer admits that the gift is excluded from the coverage of § 2055(a) (1) unless the Treaty makes it applicable (see infra, Part II of this opinion for a discussion of this point). Nevertheless, an examina-

1. The Magistratraete are now equivalent to the City Council. See note 6, infra.

2. Section 2055 provides, in pertinent part:
 "(a) In general.
 "For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * *
 "(1) to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;
 "(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *
 "(3) to a trustee or trustees, * * * but only if such contributions or gifts are to be used by such trustee or trustees * * * exclusively for religious, charitable, scientific, literary, or educational purposes * * *."

3. See note 8, infra.

4. In Edwards v. Phillips, 373 F.2d 616 (10th Cir.), cert. denied, 389 U.S. 834, 88 S.Ct. 38, 19 L.Ed.2d 94 (1967), the court, on somewhat different facts, reached the same conclusion. However, we do not adopt the rationale of the Tenth Circuit's decision as the basis for our holding in this case.

tion of the entire structure of § 2055(a) is essential to a resolution of this issue. Paragraph 1, with some modifications not here pertinent, has been continuously included in the estate tax law since the Revenue Act of 1918. Although legislative history of the paragraph is almost totally lacking, we should not attribute to Congress a futile act, but should endeavor to ascertain the purpose for the broad exemption permitted *only* for bequests to governmental bodies within the United States. If Congress thought that governmental units were charitable organizations, there surely would have been no need to give domestic governmental bodies special treatment, for bequests to charitable organizations or for exclusively charitable purposes are covered in other paragraphs of § 2055(a).

■■ The Supreme Court in United States v. Perkins, 163 U.S. 625, 16 S.Ct. 1073, 41 L.Ed. 287 (1896), said that the United States was not a charitable institution within the meaning of the New York inheritance tax statute. The Court went on to say that the United States was "a purely political or governmental corporation" and thus was not a "religious, educational, charitable, or reformatory" institution. Although the statement was dicta, the Court was observing the fairly obvious fact that a governmental unit, be it local or national, is basically a political organization and not a charitable one, although it may engage in some "charitable" functions. It is reasonable to suppose that Congress in enacting the predecessor of § 2055(a) (1) meant to provide a special deduction for bequests to domestic governmental bodies, although such deductions would not be permitted under the rubric of bequests for charitable purposes.

■ It should also be noted that § 2055(a) (1) allows the deduction to bequests made for "public purposes." Surely Congress chose the word "public" to encompass something more than "charitable," which is used in the rest of the section. It seems to us that the word "public" embodies a broader concept, and envisions gifts to domestic governmental bodies for purposes other than the ordinary philanthropic purposes most people associate with "charity." Consequently, it is our opinion that the use of the word "public" shows a congressional intention to bring within the statutory exemption gifts which could be used for such standard governmental functions as the payment of salaries to policemen and firemen. We think there is a clear indication that Congress considered that many contributions which would benefit domestic municipalities are not charitable, because the exemption permits different and broader uses of a bequest than those which are exclusively for charitable purposes.

Many activities of cities are in no sense charitable, and in fact are generally available only to paying customers. These are proprietary activities and include the operation of golf courses, wharves, market places, transportation facilities, and such public utilities as gas, water, and electric systems. It is a meaningful distinction to say that while these activities are not "charitable," they nevertheless are for public purposes, as the local government conceives the needs of its public.

■ Plaintiff's motion is supported by the affidavit of Professor Max Rheinstein, who provided translations of various Bavarian laws relating to municipal functions.[5] Even a cursory reading of

---

5. The following are excerpts from plaintiff's exhibits, translations by Professor Max Rheinstein of the University of Chicago Law School, of various pertinent statutes and ordinances.

"*Constitution of the Free State of Bavaria*

"*Art. 83(1).* The intrinsic functions of municipalities (Art. 11, para. 2) include the administration of municipal proper-

ties and enterprises; local traffic including building of roads and highways; provision of water, light, gas and electricity; institutions for the safeguard of food; local planning, construction of dwellings and supervision of buildings; local police, fire protection; local culture; primary and vocational schools and instruction of adults; guardianships and public assistance; local health; marriage coun-

these laws indicates that Fuerth is empowered to perform proprietary functions, functions which are strictly governmental, such as police and fire protection, and other functions which are more traditionally charitable in nature, such as health care. It is clear, therefore, that the beneficiary of this gift is not a "corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes" within the meaning of § 2055(a) (2). This is especially true in light of the recognition by Congress that gifts to American governmental units to be used for any public purpose are deductible *only* by reason of the provisions of § 2055(a) (1).

(b)

■ We turn now to consider whether a bequest—not clearly restricted to a charitable use—to a foreign municipality can qualify under § 2055(a) (3) as a gift or contribution to be used exclusively for charitable purposes. We first note that a tax deduction is allowable only if specifically authorized by the Internal Revenue Code (see, e. g., New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)). In this case, the Code is specific: to be deductible, the gift must be "to a trustee or trustees, * * * but only if such contributions or gifts are to be used * * * *exclusively* for religious, chari-

table, scientific, literary, or educational purposes * * *" [emphasis added]. We have no doubts that this gift was in fact in trust. While it is true the form of the gift was "to the Mayor & Magistratsraete of Fuerth, Bayern, Germany 13a," we accept Professor Rheinstein's uncontradicted affidavit that German courts would consider this a gift to the city of Fuerth. We think the language which follows the gift shows that the testator had no intention of making a gift to the persons of the Mayor and Magistratsraete, because the gift is qualified: it is "to be used and expended for the benefit of said city of Fuerth." Thus, we encounter no problem in finding that an outright gift on its face to the Mayor and Magistratsraete was a gift in trust because of the qualifying language which follows. We do not doubt that a city administration can serve as trustee for a gift in trust for the benefit of the city. See, e. g., In re Sage's Estate, 122 F.2d 480, 137 A.L.R. 658 (3rd Cir. 1941).

■■ The fact that the gift involved here was used for a charitable purpose presents plaintiff's most appealing argument. But this is not sufficient to meet the requirements of § 2055(a) (3). If the right to make the deduction could be met by showing only a charitable use of the contribution, the applicability of the estate tax in all similar situations would

seling and aid to mothers and infants; school hygiene and physical education of youth; public baths; burial of the dead; preservation of historical monuments and buildings.

"*Municipal Law of the Free State of Bavaria*

"*Art. 1 Definition.* Municipalities are original territorial corporations with the right to organize and administer the local affairs within the scope of the laws. They constitute the basis of Government and democratic life.

"*Art. 57 Scope of Intrinsic Functions.* (1) Within the scope of their intrinsic functions and within the limits of their ability, municipalities shall create the public institutions required by local conditions for the economic, social and cultural well-being of their residents. (2) Regardless of the responsibility of others, municipalities are required, in con-

formity with applicable law, to create and maintain the institutions necessary for the maintenance of public safety and order, fire protection, public hygiene, traffic, health, public aid and welfare, including juvenile assistance, public education and instruction of adults, physical education of youth, fostering of culture and preservation of public records. This provision shall not affect other statutory duties of municipalities.

"*Art. 61 Maintenance and Additions of Property.* (3) The giving away of municipal property is prohibited (Article 12, paragraph 2, sentence 2 of the Constitution).

"*Art. 62 Acquisition and Disposition of Municipal Property.* (1) Property may be acquired or disposed of only as the discharge of municipal functions requires or permits."

depend upon the vagaries of post-estate planning. The testator, and he alone, must order the recipient to hold or use the contribution exclusively for charitable purposes. Further, the statute does not permit the deduction unless it is shown that the testator intended that the gift be used exclusively for a charitable project. Estate of Lamson v. United States, 338 F.2d 376, 168 Ct.Cl. 33 (1964) and cases cited therein. Entitlement to the deduction must rest on more than a doubt or ambiguity. Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 190, n. 3, 75 S.Ct. 229, 99 L.Ed. 246 (1955). Plaintiff's proof simply fails to lift the taxpayer over this hurdle.

■ The only restriction imposed by the will was that the bequest "be used and expended for the benefit of said city of Fuerth." We find nothing in this language to establish that the testator intended that the contribution be used solely for charitable purposes. Rather, as we noted above, it seems quite likely that the purpose of this language was to make it clear that the gift, which was outright in form to the Mayor and Magistratsraete, was not intended for their own personal use, but was for the benefit of the city. But it takes a great deal of imagination to impute more to these words of the will.

Since no extraneous evidence was introduced to show the testator's intent that the gift be used exclusively for charitable purposes, we are left with the words of the will alone. We cannot agree that the will limits the use of the contribution to charitable activities, because the city of Fuerth is not legally empowered to spend money or government funds for nonpublic purposes.[6] Almost any use of the bequest for a public purpose, including some of the purely proprietary and clearly non-charitable

activities mentioned above, would benefit the city of Fuerth. Thus, for all practical purposes, the contribution was unrestricted as to use. If the mayor and city council had decided to use the gift for enlarging the city's water distribution system, for street paving, for the payment of salaries to policemen or for any of the other broad categories of activities authorized by the municipal law of the Free State of Bavaria,[7] we find nothing in the will that would have prevented the city officials from using the gift for such purposes.

We acknowledge that some of the authorities relied upon by plaintiff have broadly held that a gift to a city or other governmental body is charitable. See, e. g., Estate of Boyles, 4 T.C. 1092 (1945); Koehler v. Lewellyn, 44 F.2d 654 (W.D.Pa.1930), and Dickenson v. City of Anna, 310 Ill. 222, 141 N.E. 754, 30 A.L.R. 587 (1923). For several reasons we do not base our decision on these cases and other authorities which enunciate the same general rule. Boyles and Koehler involved gifts to domestic municipalities. Dickenson is illustrative of common law cases which have held such gifts to be charitable in order to avoid a decision that the bequest violates the Rule against Perpetuities. None of the authorities in this group considered the applicability of § 2055(a) (3) to a bequest to a foreign governmental body. Therefore, we do not feel bound under the facts of this case to follow blindly the common law concept that all gifts to a municipality for a public use are charitable. To do so would, in our opinion, render § 2055(a) (1) superfluous and defeat the purpose for which Congress enacted the predecessor of that section of the Internal Revenue Code.

As we read them, none of the federal tax cases, which have considered the deductibility of gifts to foreign govern-

6. Professor Rheinstein, in his affidavit, states *inter alia*, that the Mayor and Magistratsraete are legally the corporate municipal body, and that the municipality of Fuerth may expend its funds only for municipal purposes. But this does no

more than restate the general rule applicable to municipal corporations. See Municipal Law of the Free State of Bavaria, Articles 61 and 62, supra, n. 5.

7. See note 5, supra.

mental bodies, supports plaintiff's position. In addition to Edwards v. Phillips, note 4, supra, the pertinent cases are Beggs v. United States, 27 F.Supp. 599, 89 Ct.Cl. 39 (1939); In re Sage's Estate, supra, and Schoellkopf v. United States, 124 F.2d 982 (2d Cir. 1942).

In *Beggs,* this court considered whether donations made under a bequest to "such charities and worthy objects as they my executor and my sister shall determine, remembering, however, the City of Fort Worth, in Texas, the City of Vancouver in British Columbia, Parker County, in Texas, and England, places to which I have become attached" were deductible under the estate tax provisions as bequests to charitable institutions. In his will, the testator recited that he would write a letter to his sister to set forth his suggestions as to appropriate donees under provisions of the will and, in fact, he did write such a letter. After consulting with the sister, the executor made several charitable gifts, including one to the University of Texas. The court determined the intention of the testator from the language of the will and the surrounding facts and circumstances, and held that it was his intention to leave his residuary estate to charity, although he did not name the specific charitable institutions to which the bequests should be paid. The case does not disclose any contributions to the city of Vancouver, or to England, and the point was not considered whether a gift to either, if required to be made under the will, would be charitable.

In *Sage's Estate,* the bequest was to the Lord Provost of Glasgow, with the request that he "distribute same among such institutions in Scotland, as are devoted to the care and maintenance of the blind, maimed, and disabled soldiers and sailors of the British Army and Navy according to his best judgment and discretion." The government conceded that this was a trust for specific charitable purposes.

In *Schoellkopf,* the court considered a charitable trust which was required to make annual payments to two German cities "for charitable, educational and/or benevolent purposes." In passing on the taxpayer's claim that the bequest was deductible under Section 23(n) of the Revenue Act of 1928, which is substantially identical to § 2055(a) of the 1954 Code, the court through L. Hand, J., said:

> This the [government] challenges, because § 23(n) (1) exempts gifts made to municipalities within the United States, and by implication does not exempt any others. *That would indeed preclude unrestricted gifts to foreign cities, and is a good answer so far as concerns § 23(n) (1);* but § 23(n) (2) creates an exemption without local limitations *when the purposes are charitable as there defined.* 124 F.2d at 985 [emphasis added].

We think Judge Hand's opinion clearly indicates what we now hold—unrestricted bequests to foreign cities are not deductible under the applicable statute and regulations, whereas contributions and gifts to foreign cities for exclusively charitable purposes are deductible.

In summary, the beneficiary of the bequest involved here is a foreign municipality which engages in activities and functions that are not charitable, although they are public functions authorized by local law. Under such circumstances, it is incumbent on the taxpayer to show the testator's intent that the contribution was to be used exclusively for charitable purposes, rather than for any public purpose. Plaintiff has failed to discharge that burden in this case. See Levey v. Smith, 103 F.2d 643 (7th Cir. 1939).

II

Plaintiff argues that, whether or not the bequest qualifies for treatment as a charitable bequest under § 2055(a) (2) or (3), the estate is entitled to the claimed deduction by reason of Paragraphs 1, 2, and 3 of Article XI, Treaty of Friendship, Commerce and Navigation between the United States and the Federal Republic of Germany of October 29,

1954.[8] Plaintiff argues that since the gift would undoubtedly qualify under § 2055(a) (1) for a deduction were it made to an American municipality, the Treaty obligates this court to give similar tax treatment to a gift to a German municipality. Otherwise, plaintiff contends that contrary to the terms of the Treaty, a German city would be "subject to the payment of taxes * * * imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof * * * more burdensome than those borne in like situations by nationals and companies of such other Party."

With this argument we cannot agree. Plaintiff's position rests entirely on the fact that the city of Fuerth will receive less under the testator's will if the tax is imposed than if it is not. Thus, plaintiff reasons, Fuerth bears the burden of the tax. We do not doubt that the collection of the tax may reduce the amount of the bequest received by the city. It is equally clear, however, that within the contemplation of the law, the city does not bear the tax. Rather, the tax is borne by the estate of an American citizen, and his estate is a creature of Illinois law.

In United States v. Perkins, 163 U.S. 625, 16 S.Ct. 1073, 41 L.Ed. 287 (1896), the Supreme Court considered whether a New York inheritance tax was inapplicable because it taxed a bequest to the United States. The Court held that the tax there was "not upon the property in the ordinary sense of that term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the state that it becomes the property of the legatee." 163 U.S. at 628, 16 S.Ct. at 1075. The same concept has been applied by the Court in federal tax cases. Thus, in Y.M.C.A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924), Mr. Chief Justice Taft, in speaking for the Court, noted that the federal estate tax is not a tax on the property of the beneficiary, but on the transfer of the estate; it is a tax not on the interest to which the legatees and devisees succeed on death, but upon the interest which ceases by reason of death. Again, in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), the Supreme Court declared that the estate tax was a tax on the act of the testator, not on the receipt of the property by the legatees.

When that concept is applied here, it is clear that the Treaty provides no relief for the taxpayer estate. It is the property of the estate, still in the hands of the administrator, to which the estate tax law applies. The city of Fuerth is in no way involved in the legal process of taxation. It merely awaits the out-

8. Article XI of the Treaty reads in pertinent part as follows:

"1. Nationals of either Party residing within the territories of the other Party, and nationals and companies of either Party engaged in trade or other gainful pursuit or in scientific, educational, religious or philanthropic activities within the territories of the other Party, shall not be subject to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, within the territories of such other Party, more burdensome than those borne in like situations by nationals and companies of such other Party.

"2. With respect to nationals of either Party who are neither resident nor engaged in trade or other gainful pursuit within the territories of the other Party, and with respect to companies of either Party which are not engaged in trade or other gainful pursuit within the territories of the other Party, it shall be the aim of such other Party to apply in general the principle set forth in paragraph 1 of the present Article.

"3. Nationals and companies of either Party shall in no case be subject, within the territories of the other Party, to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, more burdensome than those borne in like situations by nationals, residents and companies of any third country."

come. Thus, this is not a situation which calls into effect the Treaty provisions, because no German national is subject to the payment of any taxes.

 Plaintiff maintains that *Brewster v. Gage,* 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930), supports its position that, in reality, the tax is on the German city's property, because the German city is the equitable owner of the bequest as soon as the testator dies. But plaintiff ignores a qualification the Court in *Brewster* attached to the statement relied upon: the right to the legatee's distributive share vests *in so much as shall remain after proper administration of the estate.* See 280 U.S. at 334, 50 S.Ct. 115. For federal tax purposes, proper administration of the estate certainly includes the payment of estate taxes. That portion of the estate that is needed to pay the estate tax belongs to the United States by operation of law. Consequently, the city of Fuerth has no "equitable" title to the whole amount of the bequest but only to so much of it as remains after the tax law operates.

 In another context, the Supreme Court has rejected the view that whoever bears the economic burden of a tax necessarily bears the legal burden for tax purposes. In *Maximov v. United States,* 373 U.S. 49, 83 S.Ct. 1054, 10 L.Ed.2d 184 (1963), the Court considered an American trust, the beneficiaries of which were British citizens. The trust realized capital gains income in this country. The gains were not distributed and were taxed under the provisions of the Internal Revenue Code. The taxpayer there claimed that because the Income Tax Convention between the United States and the United Kingdom, April 16, 1945, 60 Stat. 1377, 1384, exempted capital gains of a resident of the United Kingdom, the trust could not be taxed, because the real burden fell on the beneficiaries, who were British citizens. The Court disagreed, holding that the Convention applied to "residents" of the United Kingdom, whereas the trust, which was taxed, was a resident of the United States. We have such a case here.

The tax is imposed, as we have said, on the estate and its passing, not on the legatee and its reception of the gift. The Treaty is therefore inapplicable.

Finally, plaintiff urges that the "most favored nation" tax clause of the Treaty (Article XI, paragraph 3) requires a deduction, because of Article IX of the Treaty of Friendship, Commerce and Navigation between the United States and Italy, February 2, 1948, United Nations Treaty Series 172. However, as we have already concluded, no taxation of a German national entity is involved in this case. Since the Treaty with the Federal Republic has no application for any purpose in this case, the "most favored nation" provision of the Treaty with Italy is *a fortiori* inapplicable.

For the reasons stated above, plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted, and plaintiff's petition is dismissed.

DURFEE, Judge (concurring).

I concur in the opinion of the majority for the reasons stated therein, and for further reasons underlying the tax policy of allowing deductions for bequests to domestic municipalities which do not apply to bequests to foreign municipalities.

There are two requirements set forth in § 2055(a)(3). The first is that the bequest be made to "a trustee or trustees." It is clear that the "Mayor and Magistratraete" of the City of Fuerth could qualify as "trustees." However, the second requirement, that the bequest be intended "exclusively for * * * charitable * * * purposes," is not, in my opinion, satisfied.

In the first place, I agree with the majority's reading of the statute, and its interpretation of the common law cases cited. In addition, the other cases which equate "beneficial" with "charitable," and which would apparently support the contention that the Wasserman bequest was within the ambit of the statute, are not controlling.

Cases which have held bequests for "benevolent" purposes to be "charita-

ble," and thus within the statute, have either dealt with bequests to *domestic* corporations or municipalities (see, for example, Union & New Haven Trust Co. v. Eaton, 20 F.2d 419, 421 (D.Conn. 1927) and Koehler v. Lewellyn, 44 F.2d 654 (W.D.Pa.1930)), or have dealt with bequests which have been construed as charitable because of the language used in the trust instrument. For example, the court in Hight v. United States, 256 F.2d 795 (2d Cir.1958) construed a legacy for "such charitable, *benevolent,* religious or education institutions as my executors hereinafter named may determine," to be deductible. (Emphasis supplied.) It held there that "benevolent" was "charitable" because of the principle of *ejusdem generis.* Quoting a number of authorities, including 10 American Jurisprudence, p. 590, and Restatement of Trusts, see 398, the court stated that where "benevolent" is used in conjunction with "charitable," the former word has no wider application than the latter. The cases cited in footnote 2 of *Hight,* supra, at 798, also had "benevolent" used in conjunction with "charitable." In the Wasserman bequest, however, no such limitation for charitable purposes can be implied, absent a similar context. As the court said in *Hight:*

> The overwhelming weight of authority supports the principle that the word "benevolent" particularly *when used with the word "charitable"* applies to institutions which are within the scope of Section 303(a) (3) of the Revenue Act of 1926 * * *. Id. at 802. [Emphasis supplied]

Even if bequests "for the benefit of" a municipality were considered "charitable" without more being said in the trust instrument, the policy underlying the availability of a deduction would not necessarily be applicable to a bequest to a foreign municipality. *Hight,* supra, and St. Louis Union Trust Co. v. Burnet, 59 F.2d 922 (8th Cir. 1932), indicate that

> * * * [t]he law of his state, with reference to which the testator may

be presumed to have made testamentary disposition of his property, is not without some force as indicating his intent and purpose * * *. Id. at 927.

A look at Illinois law, and the basis for calling bequests "charitable," shows that no deduction is justified here. For example, in Dickenson v. City of Anna, et al., 310 Ill. 222, 141 N.E. 754, 30 A.L.R. 587 (1923), land was bequeathed to a school, which eventually went out of existence. The gift over to the city was held to be charitable. The court said it was well-settled that a devise to a city is charitable, as long as the testamentary instrument indicated that the property was to be used for the benefit and use of its inhabitants. Such a condition is present in the Wasserman trust, and thus it too should be considered "charitable," *except* for the rationale given in *Dickenson.*

> It is thoroughly settled by the authorities that a devise or conveyance to a government or to any municipality for the purpose of lessening the burdens of government or taxation to the inhabitants thereof, that such devises or gifts are charitable gifts. 141 N.E. 754, 757 (1923).

This rationale would be valid as applied to a U.S. municipality, but *quaere* whether it is an underlying policy of the tax laws to reduce the tax burden on foreigners imposed by their own governments? And even if it could be argued that under the *Dickenson* rationale a gift to a foreign municipality is charitable, this would only be supported by common law cases, and would disregard the express language of § 2055. Nowhere is any Illinois statute mentioned by plaintiffs which dictate that a trust for "beneficial use" of a city is "charitable." Therefore, common-law precedents are not persuasive in the face of explicitly Federal statutory language, as the majority opinions points out. Thus, neither the language of the will, nor public policy, support a deduction under § 2055 (a) (3).

COLLINS, Judge (concurring).

I concur completely in the opinion of the majority. In other circumstances, I would not hesitate to construe the doubtful language of the devise in plaintiff's behalf, thereby effectuating the policy underlying section 2055(a) (3) in favor of charitable gifts. When, as here, the devise is to a foreign municipality, however, I believe that additional and overriding considerations forbid such a loose construction.

I agree that the donative phrase "for the benefit of" could, not improperly, be read to authorize use of the gift by a municipal trustee for other than charitable purposes. It is therefore conceivable that, under similar language, a gift to the appropriate officials of a foreign municipality could be used for purposes deemed beneficial to the particular municipality, but which, at the same time, would be inimical to the interests of the United States. On the other hand, it is clear that many gifts to foreign political units will unquestionably inure not only to the benefit of the recipient, but, by creating goodwill, to the benefit of the United States as well. What is crucial, however, is that the court is in no position to weigh the political significance and impact a tax deduction for a gift to a foreign political unit might have under an ambiguous devise such as that in the instant will. Any decisions concerning the advisability of encouraging, by favorable tax treatment, unrestricted gifts to other than domestic political units should be left to Congress and the Executive Department, which have the information available and the duty to make such decisions. Viewed in this light, I do not believe that section 2055(a) (3) can be properly construed to authorize a charitable deduction for the devise in trust to Fuerth under the language used in this will.

DAVIS, Judge (dissenting).

On the undisputed facts I would hold that paragraph (3) of Section 2055(a) of Title 26 permits the deduction, and therefore I would not reach plaintiff's alternative contentions that the bequest is also deductible under paragraph (2) of Section 2055(a) or exempted by the Treaty.

I

The general rule that a tax deduction is allowable only if specifically authorized in the Internal Revenue Code (e. g., New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)) does not dictate a niggardly construction of Section 2055 (a). The provisions, including 2055(a), permitting exemption or deduction of amounts allotted to charitable uses "were begotten from motives of public policy, and are not to be narrowly construed." Helvering v. Bliss, 293 U.S. 144, 151, 55 S.Ct. 17, 21, 79 L.Ed. 246 (1934); see, e. g., Commissioner of Internal Revenue v. Estate of Sternberger, 348 U.S. 187, 190 n. 3, 75 S.Ct. 229, 99 L.Ed. 246 (1955); Old Colony Trust Co. v. Commissioner of Internal Revenue, 301 U.S. 379, 383, 384, 57 S.Ct. 813, 81 L.Ed. 1169 (1937); United States v. Provident Trust Co., 291 U.S. 272, 285, 54 S.Ct. 389, 78 L.Ed. 793 (1934); Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564 (1924); Trinidad v. Sagrada Orden de Predicadores, etc., 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458 (1924). By the same principle, "if a general charitable purpose is manifest within the limits of the language [of the will], a broad and liberal construction should be applied to that language and the gift upheld" as one intended for charitable ends. Estate of Boyles, 4 T.C. 1092, 1095 (1945); accord, Estate of Sells, 10 T.C. 692, 699 (1948); see Beggs v. United States, 27 F.Supp. 599, 89 Ct.Cl. 39 (1939); Marine Midland Trust Co. v. McGowan, 223 F.2d 408 (C.A. 2, 1955); St. Louis Union Trust Co. v. Burnet, 59 F.2d 922 (C.A. 8, 1932); Brown v. Commissioner of Internal Revenue, 50 F.2d 842 (C.A. 3, 1931); Michigan Trust Co. v. United States, 21 F.Supp. 482 (W.D. Mich.1937); Estate of Davis, 26 T.C. 549, 552 (1956); Estate of Gilbert, 4 T.C. 1006, 1010–1011 (1945). "In granting tax deductions for bequests of the type listed in [predecessor to Section

2055(a) (2) and (3)], Congress could not have intended to encourage bequests for eleemosynary purposes only to have them defeated by narrow construction." Hight v. United States, 256 F.2d 795, 802 (C.A. 2, 1958).

If Section 2055(a) (3) is considered alone, these two direction signals clearly point to the deductibility of the Wasserman bequest. The statutory paragraph permits the deduction of legacies "to a trustee or trustees * * * if such contributions or gifts are to be used by such trustee or trustees * * * exclusively for * * * charitable * * * purposes." Each of these conditions is met here.

The first requirement is that the bequest be made to "a trustee or trustees." It cannot be intended as an outright transfer, even if the recipient, because of some compulsion arising outside the will, applies the gift to a charitable purpose or transfers it to a charitable organization. See Estate of Lamson v. United States, 338 F.2d 376, 168 Ct.Cl. 33 (1964), and cases cited. Nor will mere precatory language suffice. See Delaney v. Gardner, 204 F.2d 855, 856–860 (C.A. 1, 1953); Augusta C. Burger, 12 B.T.A. 1391 (1928). The will must order the recipient to hold the contribution for, or apply it to, a charitable project.

The Wasserman will does, and was designed to do, just that. Although no trust instrument was executed and no formal trust relationship created, the will—particularly the phrase "to be used and expended for the benefit of"—is couched in trust language manifesting the testator's desire to designate the "Mayor & Magistratsraete" as trustees of the funds transferred. Neither the form of paragraph (3) nor any authority indicates that more is needed, or that there must be either an express designation of a trustee or the explicit creation of a trust. See In re Sage's Estate, 122 F.2d 480, 484, 137 A.L.R. 658 (C.A. 3, 1941), cert. denied 314 U.S. 699, 62 S.Ct. 480, 86 L.Ed. 559 (1942); Rhode Island Hospital Trust Co. v. United States, 159 F.Supp. 204, 205, 207, 208 (D.R.I.1958); Estate of Carlson, 21 T.C. 291, 292, 294 (1953); Estate of Sells, supra, 10 T.C. at 699; cf. Marine Midland Trust Co. v. McGowan, supra, 223 F.2d at 409. This position also accords with the general precepts of charitable trusts. See Restatement (Second) of Trusts § 351 (1959); IV Scott on Trusts § 351 (3d ed. 1967). In fact, Illinois, the state of the decedent's residence, appears to hold squarely that a disposition of this type creates a charitable trust. City of Aurora ex rel. Egan v. Y.M.C.A., 9 Ill.2d 286, 137 N.E.2d 347, 351 (1956) (a conveyance to the city of Aurora of land "to hold and use and permit the use for public purposes" held "to vest legal title in the city of Aurora upon an express trust to use the land for public purposes. Such a gift, when accepted, created a charitable trust with legal title in the city as trustee for the benefit of the public").

Paragraph (3) further demands that the bequest be intended "exclusively for * * * charitable * * * purposes." Applying that phrase, courts and administrators have allowed the deduction of legacies "for the beneficial usage of the citizens of Sharon and vicinity, without regard to what may be deemed legal or public charities within the contemplation of the laws of Pennsylvania" (Koehler v. Lewellyn, 44 F.2d 654 (W.D.Pa.1930)); "for civic purposes in the City of Houston" (Estate of Boyles, supra, 4 T.C. at 1095); [1] "to secure a site and erect

---

1. The defendant's contention that the charitable nature of the bequest was not at issue in *Boyles* is refuted by the Tax Court's statement that the "issue thus turns on whether the term 'civic purposes in the City of Houston' is susceptible of a public or charitable use" and its conclusion that the bequest "was clearly charitable in nature." 4 T.C. at 1096. The court's reference to "public" use may have been intended to indicate that the bequest was deductible under the 1939 Code equivalent of 2055 (a) (1), as well as the equivalent of 2055(a) (3).

thereon such an auditorium as will * * * meet the requirements and needs of the residents and citizens of the city of M" to which the ownership of the building could be transferred (Sol. Op. 159, III–1 Cum.Bull. 480, 481 (1924)); for "such *benevolent* purposes as, in their opinion, will constitute a fitting testimonial or memorial for me and, in some degree, extend my usefulness and helpfulness to others" (emphasis added) (St. Louis Union Trust Co. v. Burnet, supra, 59 F.2d at 924); and for "such charitable, *benevolent,* religious or educational institutions as my exceutors hereinafter named may determine" (emphasis added) (Hight v. United States, supra, 256 F.2d at 797). Compare the deduction, as a bequest to a corporation organized and operated exclusively for charitable purposes under the equivalent of Section 2055(a) (2), of a legacy to a body organized for "the promotion of practical *benevolence* in the city of New Haven" (emphasis added) (Union & New Haven Trust Co. v. Eaton, 20 F.2d 419, 421 (D. Conn.1927)), as well as the deduction of gifts of trust income to two German cities "for charitable, educational and/*or benevolent* purposes" (emphasis added) (Schoellkopf v. United States, 124 F.2d 982, 985 (C.A. 2, 1942) (income tax deduction)). See, also, Holdeen v. Ratterree, 292 F.2d 338, 341 (C.A. 2, 1961).[2]

There is little doubt in my mind that Mr. Wasserman, in setting aside his residuary estate "for the benefit of said city of Fuerth," wished to advantage the citizenry of that place—in other words, the legacy was "for the beneficial use of the citizens" of Fuerth, or for "civic purposes" in the city, or a project to "meet the requirements and needs of the residents and citizens of the city", or for "benevolent" purposes. It is most unlikely that he would have been satisfied if the money had been used for some "political," "proprietary," or other noncharitable end. He did not merely give the money to the "Mayor & Magistratsraete" *simpliciter,* but added the phrase about "benefit"; his motivation was plainly philanthropic. Apparently responding to the decedent's instruction, the city council has used the funds for an old peoples' home, the most typical of charities. As the courts have held, this implementation of the gift is far from irrelevant in interpreting the will. See Beggs v. United States, 27 F.Supp. 599, 606–607, 89 Ct.Cl. 39, 53–55 (1939); Hight v. United States, supra, 256 F.2d at 798–799; St. Louis Union Trust Co. v. Burnet, supra, 59 F.2d at 929; Eagan v. Commissioner of Internal Revenue, 43 F.2d 881, 884, 71 A.L.R. 863 (C.A. 5, 1930).

Another significant sign of the charitable nature of this bequest is the law of Illinois—the jurisdiction which validates the will and determines what Fuerth may do with the gift. (The court's opinion stresses the law in Bavaria, but Bavarian law could not authorize Fuerth to use the money for purposes which Illinois would not sanction under this will.) "[T]he law of his state, with reference to which the testator may be presumed to have made testamentary disposition of his property, is not without some force as indicating his intent and purpose." St.

2. Estate of Slayton, 3 B.T.A. 1343 (1926), has no bearing on the applicability of Section 2055(a) (3). The Board of Tax Appeals held that a gift to a city of an organ and a trust fund for its maintenance, as a memorial and "to encourage musical education in the community", was not deductible under the then income tax equivalent of Section 2055(a) (2) because "a municipal corporation is not a corporation organized and operated exclusively for * * * charitable * * * or educational purposes." 3 B.T.A. at 1346. That statute (Revenue Act of 1918, ch. 18, § 214(a) (11), 40 Stat. 1057, 1068 (1919)) had no parallel to paragraphs (1) or (3) of Section 2055(a), and the Board, therefore, had no opportunity to · decide whether the city could be considered the trustee of a bequest to be used exclusively for charitable purposes. Similarly, United States v. Perkins, 163 U.S. 625, 630–631, 16 S.Ct. 1073, 41 L.Ed. 287 (1896), held that the United States did not qualify as a corporation "exempt by law from taxation" under the New York inheritance tax act; the decision turned on that particular state law and does not, in any event, affect 2055(a) (3).

Louis Union Trust Co. v. Burnet, supra, 59 F.2d at 927; see Hight v. United States, supra, 256 F.2d at 799. Illinois statute and case law indicates that "for the benefit of" would manifest an intent that the property be devoted to charitable purposes. The words "benevolent" and "beneficent" have been used together with "charitable" in tax exemption statutes (S.H.A. ch. 120, § 401 (1968) (state inheritance tax); S.H.A. ch. 120, § 500.7 (Supp.1968) (property tax)), and have been construed in this context as synonymous with "charitable". People v. YMCA, 365 Ill. 118, 6 N.E.2d 166 (1936); Turnverein "Lincoln" v. Board of Appeals, 358 Ill. 135, 192 N.E. 780 (1934); People ex rel. Greer v. Thomas Walters Chapter of the Daughters of the American Revolution, 311 Ill. 304, 142 N.E. 566 (1924).[3] There is likewise no doubt that under Illinois common law, the bequest here would be held to create a charitable trust. I have already noted City of Aurora ex rel. Egan v. Y.M.C.A., supra, 9 Ill.2d 286, 137 N.E.2d 347, 351 (1956), in which a conveyance to the city of Aurora of land "to hold and use and permit the use for public purposes" was held "to vest legal title in the city of Aurora upon an express trust to use the land for public purposes. Such a gift, when accepted, created a charitable trust with legal title in the city as trustee for the benefit of the public." See, also, Dickenson v. City of Anna, 310 Ill. 222, 141 N.E. 754, 30 A.L.R. 587 (1923).

All this the court summarily brushes aside because of its underlying premise that the presence in the Internal Revenue Code of Section 2055(a) (1) requires the "exclusively for * * * charitable * * * purposes" standard of 2055 (a) (3) to be read and applied strictly, rather than liberally, where foreign governmental units are involved. It is thought that this approach is necessary in order to fulfill the Congressional aim not to allow deductions for bequests to alien public entities which are not "exclusively charitable" in nature, though they may be for "public purposes". The court does not adopt the position of Edwards v. Phillips, infra, 373 F.2d 616 (C.A. 10), cert. denied, 389 U.S. 834, 88 S.Ct. 38, 19 L.Ed.2d 94 (1967)—that 2055(a) (1) necessarily excludes from 2055(a) (3) all charitable bequests to foreign governmental organizations—but it does use 2055(a) (1) to look askance at gifts to such foreign bodies seeking coverage under (a) (3). As I see it, this basic concept, which pervades the majority's treatment of this point, is quite mistaken and without support in the legislation or its history. When Congress authorized deductions in 2055(a) (3) only where the purposes were exclusively charitable, it obviously meant to bar those which were not exclusively charitable. Yet the courts have never taken this dichotomy as a reason for construing 2055(a) (3) narrowly in order to assure that all noncharitable bequests

---

3. See, especially, Smith-Hurd Illinois Annotated Statutes, ch. 23, § 4001 (1968), authorizing the State of Illinois to accept gifts of property to it and its institutions. Entitled "Effect of gift to state for charitable use," it provides: "Whenever any grant, gift, donation, devise, or' bequest of real or personal property has been or shall be * * * made to or for the use of the state * * * or other charitable or educational institution of the state, and the deed, will or other instrument by which such grant, gift, donation, devise or bequest is made, declares that such property shall be held, managed, improved and invested or otherwise disposed of *for the benefit of* such institution or

other charitable use, the title to such property may and shall be taken to be vested in the state for the use so expressed, and shall be held * * * by the trustees of such institution or other officers thereto duly authorized, in such manner as will best promote and carry into effect the purpose and intention of the person making such grant, gift, donation, devise or bequest, as expressed in the instrument by which the same was or shall be so made" (emphasis added). It appears from this statute that the language of the Wasserman will would have been an appropriate form of transferring this bequest to certain governmental instrumentalities for a charitable use in Illinois.

are left out; the rule and the practice, as I have pointed out, has been decidedly to the contrary. By the same token, there is no warrant for making a special case of 2055(a) (3), in the single instance where foreign governments are involved, simply because Congress may have indicated that certain activities of those governments were not to be covered by that subsection. Nothing in the legislative history or background suggests that under 2055(a) (3) bequests involving foreign public bodies are to be dealt with any differently than gifts involving American governmental entities or private trustees, individuals, or groups (foreign or domestic). For all of these categories alike, Congress wished to limit the deduction under 2055(a) (3) to charitable uses, and there is no intimation in the history of varying criteria for any of these subclasses, or of any hesitancy or caution as to the single group comprising foreign governmental units. See Part II, infra. All are treated on the same plane in the statute and its history.

For these reasons, I must conclude that, since the statutory term "exclusively for * * * charitable * * * purposes" covers a broad spectrum of projects benefiting a community and its members,[4] a bequest "for the benefit of said city of Fuerth" meets that requirement of Section 2055(a) (3).[5]

## II

The Government urges, however, that the scope of 2055(a) (3) is impliedly limited by 2055(a) (1), which allows the deduction of bequests "to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes." The argument is that Congress, by treating only domestic political units in paragraph (1), must have intended to exclude from the whole of Section 2055(a) any bequest to or for the use of a foreign governmental body, even though the legacy was indisputably charitable and would otherwise come within one of the remaining clauses of the provision.

This precise issue was recently decided in the Government's favor by the Tenth Circuit, which, finding "nothing outside the language of the statute that leads to resolution of the question," held that "the venerable doctrine inclusio unius est exclusio alterius" compels the conclusion that "the language of subpart (1) of § 2055(a) does not allow a deduction from the gross estate for bequests to foreign governments or political subdivisions thereof." Edwards v. Phillips, supra, 373 F.2d 616, 619 (C.A. 10), cert. denied, 389 U.S. 834, 88 S.Ct. 38, 19 L.Ed.2d 94 (1967).[6] On the other hand, the Second

---

4. Though possibly not every use that might be called a "public purpose." See the discussion of Section 2055(a) (1), Part II, infra.

5. Paragraph (3) also requires that the trustees not carry on substantial propaganda and lobbying activities. The defendant does not dispute the affidavit of the mayor (who was also the former legal adviser) of Fuerth that neither the city nor its officials engage in such activities.

 Whether the City of Fuerth qualifies, under Section 2055(a) (2), as a "corporation organized and operated exclusively for * * * charitable * * * purposes" is irrelevant in determining the application of 2055(a) (3). See Rhode Island Hospital Trust Co. v. United States, 159 F.Supp. 204, 208 (D. R.I.1958); Estate of Audenried, 26 T.C.

120, 126 (1956). However, it is relevant to our problem that, even as to (a) (2), the courts have not read "exclusively" strictly to mean "without any exceptions", but rather that the nonconforming activities be no more than incidental in nature. Dulles v. Johnson, 273 F.2d 362, 363 (C.A.2, 1959) cert. denied, 364 U.S. 834, 81 S.Ct. 54, 5 L.Ed.2d 60 (1960); see Better Business Bureau v. United States, 326 U.S. 279, 283, 66 S. Ct. 112, 90 L.Ed. 67 (1945); St. Louis Union Trust Co. v. United States, 374 F.2d 427, 431–432 (C.A.8, 1967).

6. The bequest in Edwards was to a Danish school district "To be used by said school district in any manner it may wish for the betterment of the schools or aid to the students of said district." 373 F.2d at 617. The parties stipulated that the school district was a Danish

Circuit, in an opinion not cited to the Tenth Circuit, earlier declined to apply the maximum when interpreting an income tax statute (Revenue Act of 1928, ch. 852, § 23(n), 45 Stat. 791, 801) substantially identical to Section 2055(a) (1) and (3), and held that gifts, other than "unrestricted gifts", to foreign municipalities could be exempted under a provision like paragraph (3) of Section 2055(a). Schoellkopf v. United States, supra, 124 F.2d 982, 985 (C.A. 2, 1942) (per Judge Learned Hand).

As taxpayer readily admits, and *Schoellkopf* held, *expressio unius* would obviously exclude bequests to foreign governments from the coverage of paragraph (1) itself. Cf. Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 375–376, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958). But to use the doctrine to evoke a negative implication from that part of the statute in order to narrow the broad reach of paragraph (3) is quite another matter. The canon, like the other aids to construction, is but "an axiom of experience" (Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928); Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 544 (1947)), and experience counsels, where "differing views may readily be entertained", to "seiz[e] every thing from which aid can be derived" (Cheng Fan Kwok v. Immigration & Naturalization Service, 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)), rather than to look mechanically to one "rule" alone. Cf. Springer v. Government of the Philippine Islands, 277 U.S. 189, 206, 48 S.Ct. 480, 72 L.Ed. 845 (1928); Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & Pac. Ry. Co., 294 U.S. 648, 677–678, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); Neuberger v. Commissioner of Internal Revenue, 311 U.S. 83, 88, 61 S.Ct. 97, 85 L.Ed. 58 (1940); Sims v. United States, 359 U.S. 108, 111–113, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959); United States v. Republic Steel Corp., 362 U.S. 482, 486–489, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960).

We are particularly told that " 'great caution is requisite in dealing with' " *expressio unius;* that " '[i]t is often a valuable servant, but a dangerous master to follow in the construction of statutes' "; and that " '[t]he *exclusio* is often the result of inadvertence or accident' * * *." Ford v. United States, 273 U.S. 593, 612, 47 S.Ct. 531, 537, 71 L.Ed. 793 (1927). In this light, the Supreme Court has said, quite precisely, that the "maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment." Id. at 611, 47 S.Ct. at 537.

Looking to the terms, purpose, and history of this charitable deduction, I do not find it natural to infer that Congress intended to cut off all bequests to foreign governmental bodies simply because it dealt specifically with the domestic variety. Aside from the disputed inference to be drawn from 2055(a) (1), there is not the slightest indication, so far as I know, that Congress wanted to exclude legacies to foreign governments from the coverage of 2055(a) (3) if the bequest satisfied the requirements of that paragraph.[7] It has been suggested that perhaps Congress did not want to encourage gifts to foreign governments because the legacy might be used for purposes inimical to the interests of the United States. The Tenth Circuit rejected that contention as unsubstantiated in fact (Edwards v. Phillips, supra, 373 F.2d at 619), and I agree. Not only might bequests to foreign governments

---

political subdivision. The court did not reach the question of whether the school district was also a trustee under paragraph (3) or a charitable corporation under paragraph (2).

7. The charitable-bequest deduction of the estate tax was first enacted in the Revenue Act of 1918, ch. 18, § 403(a) (3), 40 Stat. 1057, 1098 (1919), and has been carried forward with no substantial amendments (for present purposes).

be potentially more beneficial than detrimental to American concerns (cf. Eaton, Charitable Foundations Making Grants Abroad, 17 Tax L.Rev. 41, 74–75 (1961), and authorities cited), but, had that been Congress' fear, it would probably have barred the deduction of all bequests for foreign beneficiaries—which it did not do.[8]

Nor is the mere existence of Section 2055(a) (1) enough of a ground for inferring that foreign public entities cannot come under the broad language of Section 2055(a) (3). There is no real clue as to why Congress singled out American political organizations, but one can readily think of reasons unconnected with an intent to exclude alien bodies entirely from any part of Section 2055 (a). Perhaps Congress wished to offset the possibility that paragraph (2)—dealing with gifts to religious, charitable, etc. "corporations"—might be interpreted, as New York had read its comparable inheritance tax provision, to exclude political bodies. See United States v. Perkins, supra, n. 2, 163 U.S. at 630–631, 16 S.Ct. 1073. Perhaps Congress felt that bequests to domestic governmental units were especially desirable and wished to encourage them. It is conceivable, of course, that the draftsmen thought

that gifts to political subdivisions could not come under either paragraph (2) or paragraph (3) at all—but of this there is no inkling anywhere in the history. It is at least as plausible that Congress desired to allow gifts to domestic political entities unencumbered by the various limitations imposed on gifts coming under the other two clauses of Section 2055(a).

Indeed, it might have been harder to deny that Section 2055(a) (1), in itself, blankets the whole subject of bequests to governmental bodies—both domestic and alien—if all gifts to American governments deductible under that provision would also be covered by my reading of paragraph (3). If that were so, the former would be entirely superfluous and redundant. But 2055(a) (1) permits legacies to domestic political units "for exclusively public purposes", while 2055 (a) (3) specifies that the bequest must be made "exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals", and also prohibits use for substantial propaganda and lobbying activities. Some bequests deductible under paragraph (1) as intended for "public purposes" might not be deductible under the different requirements of paragraph (3)—for example, a con-

---

8. The current income tax provisions are quite different. For either an individual or a corporation, the recipient trust must be organized or created in, or under the laws of, the United States, a state, or a United States possession. However, only a corporate gift must be for use within the United States or its possessions. See Int.Rev.Code of 1954, § 170 (c) (2). These restrictions evolved from the provision permitting, for the first time, a deduction by a corporation for charitable donations. Revenue Act of 1935, ch. 829, § 102(c), 49 Stat. 1014, 1016; Revenue Act of 1936, ch. 690, § 23(q), 49 Stat. 1648, 1661. The "domestic organization" restriction on contributions by individuals was inserted by the Revenue Act of 1938, ch. 289, § 23(o), 52 Stat. 447, 463, and was changed to what is essentially its present form by the Revenue Act of 1939, ch. 247, § 224(a), 53 Stat. 862, 880. The House Report accompanying the 1938 Act states that the exemption "is based

upon the theory that the Government is compensated for the loss of revenue by its relief from financial burden[s] which would otherwise have to be met by appropriations from public funds, and by the benefits resulting from the promotion of the general welfare. The United States derives no such benefit from gifts to foreign institutions, and the proposed limitation is consistent with the above theory." H.R.Rep. No. 1860, 75th Cong., 3d Sess. 19 (1938), reprinted in 1939–1 Cum.Bull. 728, 742. See generally Eaton, supra, 17 Tax.L.Rev. at 42–46.'

Congress never placed similar restrictions on the estate tax deduction, a point which the regulations mention. See Treas.Reg. § 20.2055–1(a) (1958). It is also significant that, even with respect to the limitation in the income tax provision, Congress expressed no concern over the possibility that a bequest to a foreign organization might be used for a purpose adverse to American interests.

tribution for the municipal bus system, for election expenses, or for lobbying at the state or federal level for increased grants to a municipality or for home rule. Compare Restatement (Second) of Trusts §§ 373, comment c, and 374, comment k, at 256, 260–61 (1959) (indicating that, for some purposes, such expenses might be considered "charitable"). Certainly the express proscription of lobbying and propaganda activities would take from the ambit of 2055 (a) (3) at least one class of gifts within 2055(a) (1). Further, and the Second Circuit noted this possibility in Schoellkopf v. United States, supra, 124 F.2d at 985, an outright bequest to be placed directly in an American city's coffers might be deductible under 2055(a) (1) but not under 2055(a) (3).[9] Conversely, if paragraph (1) had been omitted, many but not all gifts to governmental bodies, both American and foreign, could have been made under paragraph (3) through a trust arrangement. Thus, even for domestic governmental units, there is an imperfect correlation between the two segments of Section 2055(a), with substantial though partial overlap. Paragraph (1) may be the main vehicle but it is not exclusive; the remaining portions of the statute have substantial functions.[10]

Without reliable support for the application of *expressio unius* in the history or ordering of the statute, I am very reluctant to give Section 2055(a) a construction that seems so at odds with its undisputed purpose of encouraging charitable bequests. Cf. S. E. C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–351, 64 S.Ct. 120, 88 L.Ed. 88 (1943); United States v. Barnes, 222 U.S. 513, 518–520, 32 S.Ct. 117, 56 L.Ed. 291 (1912); Johnson v. Southern Pac. Co., 196 U.S. 1, 14–17, 25 S.Ct. 158, 49 L.Ed. 363 (1904); Church of the Holy Trinity v. United States, 143 U.S. 457, 458–459, 12 S.Ct. 511, 36 L.Ed. 226 (1892). Wholesale exclusion from Section 2055 (a) of bequests to foreign governments is not a "natural association of ideas" (Ford v. United States, supra, 273 U.S. at 611, 47 S.Ct. 531) in a statute that, through the use of broad and overlapping phraseology, is clearly designed to authorize the deduction of a very wide range of bequests for humanitarian purposes. I think, rather, that, if the attention of Congress had been focused on the problem, it would not have indicated that gifts such as this were non-deductible.[11]

---

9. *Schoellkopf* excepted "unrestricted gifts" from a provision equivalent to 2055(a) (3). Probably this was meant to cover an outright gift (i. e., not through a trustee), but it may have been aimed at designating a gift not necessarily devoted to charitable purposes (i. e., a gift covering "political" or "proprietary" purposes). In either event, the boundaries of paragraph (1) would not be the same as those of paragraph (3) with respect to bequests to domestic governmental organizations. The former would have broader coverage.

10. From other aspects of Section 2055 (a) it is. also plain that *expressio unius* cannot be applied rigorously. Paragraph (2), for instance, explicitly allows deduction of gifts to corporations organized and operated for the "encouragement of art." Paragraph (3) makes no reference to that subject. *Expressio unius* could therefore be invoked to deny a deduction for a bequest in trust for the encouragement of the arts. This does not seem at all consonant with Congress' intent, and in Estate of Kirkwood, 23 B.T.A. 955, 965 (1931), the Board of Tax Appeals, without hesitation, permitted the deduction of a bequest which, through a trustee, was to be used for an art gallery and the purchase of works of art.

11. The defendant invokes another time-honored "rule" of construction—that the "general language of a statutory provision * * * will not be held to apply to a matter specifically dealt with in another part of the same enactment." The defect in this argument is the same as that which besets the application of *expressio unius*. Section 2055(a) (1) does not specifically deal with bequests to or for the use of foreign political units, and the relevance of the "general-specific" rule must rest on the assumption that Congress, by omitting reference to bequests to such bodies from paragraph (1), intended to exclude them from coverage under any part of 2055 (a). As pointed out in the text, I cannot accept that assumption.

I must therefore disagree with Edwards v. Phillips, supra, and follow instead the reasoning of the Second Circuit in Schoellkopf v. United States, supra.[12] In my view, the Tenth Circuit—which premised its opinion on the rule that a deduction must be specifically provided for, without referring to the equally pertinent principle that provisions for charitable bequests must be liberally construed —gave Section 2055(a) an unnecessarily restrictive reading. Of course, the rule of liberal construction does not mean that the words of the statute are to be given "unusual or tortured meanings" or that "express limitations on such exemptions are to be ignored." Better Business Bureau v. United States, supra, 326 U.S. at 283, 66 S.Ct. at 114 (1945). But Section 2055(a) (3) seems, without stretching its language, fairly applicable to the Wasserman bequest, and I am unwilling to shrink it by a hypothetical negative implication from paragraph (1) that is not sustained by the legislative history or purpose, or by the structure of the section as a whole.

Accordingly, I would deny defendant's motion for summary judgment, grant plaintiff's motion, and enter judgment that plaintiff is entitled to recover.

LARAMORE and NICHOLS, JJ., join in the foregoing dissenting opinion.

NICHOLS, Judge (dissenting).

I dissent and join in Judge DAVIS's dissenting opinion. I agree with the majority that the charitable deduction under sec. 2055(a) (3) is unavailable when a bequest can be lawfully diverted to a noncharitable use. However, as I read City of Aurora ex rel. Egan v. Y.M.C.A., 9 Ill.2d 286, 137 N.E.2d 347 (1956), under the will and under Illinois law the Mayor and Magistratsraete of Fuerth, Bavaria, received the residue of the estate in trust for charitable purposes only. They were not free to divert it

to any purpose, even if beneficial to the citizens of Fuerth, if not charitable. A bequest available to a municipality for all proper governmental purposes might be a case different from the case before us, and one as to which we should not, I think, express any opinion. I do not have any view about it, as of now. It does not render sec. 2055(a) (1) meaningless if one concludes that charitable bequests to municipalities are also exempt under 2055(a) (3). Congress knows about American municipalities and knows the constitutional limitations on their activities. It does not know about foreign municipalities, so at a minimum some proofs would be required, such as plaintiff furnished here, as to the status and function of the Mayor and Magistratsraete under German law. Thus sec. 2055(a) (1) permits distribution to American municipalities without red tape that must somewhat encumber the proceedings in case of foreign municipalities. The Mayor and Magistratsraete having devoted the legacy to that most classic of charitable uses, an old folk's home, they have also mooted the question whether charitable uses in the case of a municipality must exactly parallel what would be charitable uses in the case of private trustees; i. e., if a private police force is not a charitable use, then a public force is not one either. This issue was not briefed or argued and I would prefer to withhold from the parties our conclusions about it. If the testator here limited his bequest to charitable uses, whatever they may be in the case of a municipality, the possibility of diversion by the Mayor and Magistratsraete to noncharitable uses, whatever they may be, is eliminated.

In Estate of Lamson v. United States, 338 F.2d 376, 168 Ct.Cl. 33 (1964), the issue was whether that decedent estate could take a charitable deduction from estate tax for a legacy to a son, because the testator had known the son was a

---

12. In Schoellkopf the gift was explicitly in trust, but I have already expressed the view, in the first half of this opinion, that the present decedent's bequest must likewise be viewed as in trust, falling under Section 2055(a) (3). The majority agrees that the bequest was in trust.

priest, bound by the vows of his order to turn over any property he might receive to the order for its religious purposes. The opinion appears to assume that the son might lawfully have left the order after the will was made but before the father's death, and if he had, his ownership of the legacy would have been absolute. If so, this was obviously a determinative factor lacking here. Under the *City of Aurora* case, Fuerth had no option, in my opinion, such as Lamson's son did, to divert the legacy lawfully to noncharitable purposes.

I do not reach the treaty question and express no view about it.